Tyson C. Kade
Melinda L. Meade Meyers
VAN NESS FELDMAN, LLP
1050 Thomas Jefferson Street, NW
Seventh Floor
Washington, DC  20007
Tel.: 202.298.1800
Fax: 202.338.2416
Email: tck@vnf.com
        mmeademeyers@vnf.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTH SLOPE BOROUGH, IÑUPIAT COMMUNITY OF THE ARCTIC SLOPE, and ARCTIC SLOPE REGIONAL CORPORATION<br><br>              Plaintiffs,<br><br>     v.<br><br>WILBUR ROSS, in his official capacity as U.S. SECRETARY OF COMMERCE, and NATIONAL MARINE FISHERIES SERVICE,<br><br>              Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### (5 U.S.C. §§ 701-706; 16 U.S.C. §§ 1531-1544)

*North Slope Borough et al. v. Ross et al.*
Complaint - 1

# I.    INTRODUCTION

1.    Plaintiffs North Slope Borough, the Iñupiat Community of the Arctic Slope, and Arctic Slope Regional Corporation (collectively, "Plaintiffs") bring this action for declaratory judgment and injunctive relief against the Secretary of Commerce ("Secretary") and the National Marine Fisheries Service ("NMFS") (collectively, "Defendants") under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, for failure to timely make a mandatory 90-day finding on Plaintiffs' Petition to Delist the Arctic Subspecies of Ringed Seal (*Phoca hispida hispida*) (the "Petition"), in violation of Section 4(b)(3) of the ESA.  16 U.S.C. § 1533(b)(3)(A).

2.    NMFS listed the Arctic ringed seal as a threatened species under the ESA in December 2012.  *See* Endangered and Threatened Species; Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal and Endangered Status for the Ladoga Subspecies of the Ringed Seal, 77 Fed. Reg. 76,706 (Dec. 28, 2012) ("Listing Rule").  Since that time, the available scientific information confirms that the population of Arctic ringed seals remains high and, while sea ice coverage has been declining in the Arctic for several decades, the population remains healthy.  As detailed in the Petition, attached as Exhibit A, new information and additional analyses of previously available data demonstrates that the scientific basis for the Listing Rule was erroneous and that the Arctic ringed seal is not in danger of becoming extinct within the foreseeable future.

3. Pursuant to Section 4 of the ESA, Plaintiffs submitted their Petition to delist the Arctic ringed seal to Defendants on March 26, 2019. The ESA requires that Defendants make a finding within 90 days of receipt of the Petition, "[t]o the maximum extent practicable," as to whether "the petition presents substantial scientific or commercial information indicating that the petitioned [delisting] action may be warranted." 16 U.S.C. § 1533(b)(3)(A). In addition, if delisting may be warranted, Defendants are required to initiate a status review of the species and, within 12 months of receipt of the Petition, determine whether delisting is "warranted." *Id.* § 1533(b)(3)(B). Defendants have failed to timely meet their obligations to act on the Petition and make the requisite findings, in violation of the ESA.

4. To remedy these violations, Plaintiffs seek declaratory and injunctive relief to enforce the ESA statutory deadline for Defendants to make the requisite 90-day finding on the Petition, declaring that Defendants are in violation of the ESA and its mandatory deadlines and compelling Defendants to determine whether delisting the Arctic ringed seal may be warranted in accordance with these deadlines.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & 1540(g) (action arising under ESA citizen suit provision), 5 U.S.C. § 702 (review of agency action under the APA), and 28 U.S.C. § 1331 (federal question jurisdiction).

*North Slope Borough et al. v. Ross et al.*
Complaint - 3

6.      This Court has authority to grant the requested relief pursuant to the ESA, 16 U.S.C. § 1540(g), 28 U.S.C. §§ 2201-2202 (injunctive relief and declaratory judgment), and the APA, 5 U.S.C. §§ 701-706.

7.      Plaintiffs satisfied the written notice requirement of the ESA citizen suit provision. 16 U.S.C. § 1540(g)(2)(C).  On April 24, 2020, more than 60 days prior to filing this Complaint, Plaintiffs sent to Defendants, via electronic and certified mail, written notice of their violations of the ESA.  A copy of Plaintiffs' written notice is attached as Exhibit B.  Despite receipt of Plaintiffs' written notice, Defendants have failed to remedy the violations set forth therein.

8.      Plaintiffs have exhausted all administrative remedies, and an actual, justiciable controversy now exists between Plaintiffs and Defendants, and the requested relief is proper under 28 U.S.C. §§ 2201-2202, 5 U.S.C. §§ 701-706, and 16 U.S.C. § 1540(g).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because this action is brought against officers of agencies of the United States in their official capacities and against NMFS, Plaintiffs are located within this District, and a substantial part of the events or omissions giving rise to the claims made here occurred in this District.  Specifically, the Arctic ringed seal is located within this District and is the subject matter of the claims raised here, and NMFS maintains an office in this District.

*North Slope Borough et al. v. Ross et al.*
Complaint - 4

10.     The federal government has waived sovereign immunity in this action pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

## III.     PARTIES

**A.     Plaintiffs**

**i.     North Slope Borough**

11.     Plaintiff NORTH SLOPE BOROUGH (the "Borough") is the area-wide local government for the northern portion of the State of Alaska.  Its authority is analogous to, or greater than, that of county governments in other states.  The Borough's jurisdiction extends from the United States-Canada border across to western Alaska, and its coastline extends across the Beaufort and Chukchi Seas.

12.     The Borough is responsible for or engaged in, inter alia, planning, zoning, environmental protection, and wildlife management.  Its municipal activities have required, and will likely require in the future, federal agency permits and authorizations, and expenditure of federal funding made available through grants and direct appropriations.  The Borough has constructed, operated, and maintained, and will continue to construct, operate, and maintain facilities and other infrastructure necessary to provide services to its residents, including facilities, infrastructure, and services requiring coastal development and habitat alteration.  Additionally, the Borough has engaged in, and is likely in the future to engage in, independent research and cooperative research with federal agencies, State of Alaska agencies, various academic institutions,

*North Slope Borough et al. v. Ross et al.*
Complaint - 5

industry partners, and others on ringed seals and other coastal and marine wildlife resources. Many of these activities have been and will be located within or adjacent to the range of the Arctic ringed seal.

13.     Over 74 percent of the Borough's residents are Iñupiat. The Iñupiat people have relied upon ringed seals for thousands of years, and their health, cultural well-being, and survival depend upon the continued availability of the seals for subsistence purposes. Given this reliance on ringed seals for dietary and cultural needs, the Borough's citizens have the most direct and current knowledge of ringed seal habitat, numbers, health, behavior, and activity on and adjacent to the North Slope. Additionally, many Borough residents participate in ice seal conservation efforts and in Arctic circumpolar scientific, cultural, and educational initiatives. As such, the Borough's residents have unique insights into the best scientific data available regarding the status and habitat of ringed seals and the threats potentially impacting the species.

14.     The Borough's ability to obtain federal agency permits and authorizations, funding, or involvement for its activities is impacted by the Arctic ringed seal's continued status as a threatened species. The Borough's construction, operation, and maintenance of essential facilities, and the provision of essential services to its residents have been subject to additional delay and greater expense. In addition, the continued listing of the healthy and robust Arctic ringed seal population has caused Alaska Native subsistence hunters confusion and apprehension that hunting ringed seals could result in a violation

*North Slope Borough et al. v. Ross et al.*
Complaint - 6

of the law.  This has caused some Borough residents to stop hunting this species to avoid

potential prosecution or associated social stigma.

### ii. Iñupiat Community of the Arctic Slope

15.    Plaintiff IÑUPIAT COMMUNITY OF THE ARCTIC SLOPE ("ICAS") is

a federally-recognized Alaska Native regional tribal government under the Indian

Reorganization Act of 1934, as amended.  *See* 25 U.S.C. § 5101 et seq.  ICAS represents

village tribal members from eight villages in the region:  the Native Village of Atqasuk,

the Native Village of Barrow, Naqsragmuit Tribal Council (Anaktuvuk Pass), the Native

Village of Kaktovik, the Native Village of Nuiqsut, the Wainwright Traditional Council,

the Native Village of Point Hope IRA, and the Native Village of Point Lay.  In so doing,

ICAS represents the interests of the Iñupiat people, who have relied upon ringed seals for

subsistence purposes for thousands of years.

16.    Given this reliance on the species for subsistence, and the effect of the

listing on economic and community development opportunities, including infrastructure

development, the listing of the Arctic ringed seal has significantly impacted ICAS and its

members.  For example, the continued listing of the species has impacted the interests of

ICAS and its members in the proper management, by the Iñupiat people, of the Arctic

ringed seal subsistence hunt and ICAS's interest in preserving the unique and special

relationship of their people to the subsistence hunt.  In addition, the continued listing of

*North Slope Borough et al. v. Ross et al.*
Complaint - 7

the ringed seal has imposed additional costs and burdens on efforts to develop important infrastructure projects that directly benefit ICAS and its members.

### iii. Arctic Slope Regional Corporation

17.    Plaintiff ARCTIC SLOPE REGIONAL CORPORATION ("ASRC") is an Alaska Native-owned Regional Corporation created at the direction of Congress under the terms of the Alaska Native Claims Settlement Act of 1971 ("ANCSA"). *See* 43 U.S.C. § 1606.  Under ANCSA, Iñupiat living on the North Slope of Alaska in 1971 were enrolled as shareholders in ASRC.  ASRC has since issued additional shares to shareholders' descendants, giving ASRC approximately 13,000 shareholders.  ASRC represents the interests of the Iñupiat of the Arctic Slope, an area that the Iñupiat have shared with the ringed seal for generations.  The continued listing of the Arctic ringed seal directly impacts the daily life, property interests, and economic welfare of ASRC's shareholders.

18.    ASRC owns approximately 5,000,000 acres of land on the North Slope, including both surface and subsurface lands, much of which is located along the coastline of the Beaufort and Chukchi Seas.  These lands were conveyed to ASRC by the United States pursuant to ANSCA to provide for the economic well-being of the North Slope's Iñupiat people.  In furtherance of this congressionally-mandated mission, ASRC conducts, and will continue to conduct, a variety of development and construction activities related to natural resource utilization, infrastructure expansion, and other

*North Slope Borough et al. v. Ross et al.*
Complaint - 8

purposes.  ASRC's ability to obtain Federal agency permits and authorizations, funding, or third-party participation in these activities is impacted by the ringed seal's status as a threatened species, and the listing status subjects ASRC's activities to significant delays and greater expenses.

## B.     Defendants

19.     Defendant WILBUR ROSS is sued in his official capacity as the Secretary of the U.S. Department of Commerce.  Secretary Ross directs all business of the Department of Commerce, including NMFS.  The Secretary is the federal official charged with final responsibility for making a determination on Plaintiffs' Petition to delist the Arctic ringed seal and for the associated violations of the ESA and the APA as alleged in this Complaint.

20.     Defendant NMFS is a federal agency of the National Oceanic and Atmospheric Administration within the U.S. Department of Commerce.  Through delegation of authority from the Secretary, NMFS administers the provisions of the ESA, including determinations on listing and delisting petitions, with regard to certain threatened and endangered wildlife, including, but not limited to, the Arctic ringed seal. The authority delegated to NMFS to administer and to implement the ESA is subject to, and must be in compliance with, the applicable requirements of the ESA and the APA.

# IV.    LEGAL BACKGROUND

21.    The ESA applies to species "so depleted in numbers that they are in danger of or threatened with extinction." 16 U.S.C. § 1531(a)(2). The ESA defines an "endangered" species as one "which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened" species is one "which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

22.    Listing a species will invoke certain other ESA obligations and legal protections. At the time of listing, or within 12 months, the Secretary must designate critical habitat for the species. *Id.* § 1533(a)(3). Pursuant to ESA Section 7(a)(2), a federal agency must consult with the Secretary whenever any action authorized, funded, or carried out by the agency "may affect" a listed species, to ensure that the action "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [designated critical habitat]." *Id*. § 1536(a)(2). Pursuant to ESA Section 9, among other things, it is unlawful for any person to engage in the illegal or unauthorized "take" of an endangered species. *Id.* § 1538(a)(1)(B), (C). The Secretary may, but is not required to, promulgate a regulation extending the Section 9 take prohibition to a threatened species. *Id.* § 1533(d). While the ESA allows taking of endangered and threatened species by Alaska Natives and non-native permanent residents of Alaska native villages for subsistence

*North Slope Borough et al. v. Ross et al.*
Complaint - 10

purposes, NMFS may restrict subsistence taking if it determines that such taking materially and negatively affects the listed species. *Id.* § 1539(e)(1), (4).

23. Section 4 of the ESA authorizes Defendants to remove a species from the list of threatened or endangered species. *Id.* § 1533(a)(2)(B), (b)(3). When considering whether to delist a species, Defendants will determine whether the species remains threatened or endangered because of any one, or a combination of, the following factors:

> (1) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (2) overutilization for commercial, recreational, scientific, or educational purposes;
> (3) disease or predation;
> (4) the inadequacy of existing regulatory mechanisms; or
> (5) other natural or manmade factors affecting [the species'] continued existence.

*Id.* § 1533(a)(1); 50 C.F.R. § 424.11(e)(2), (c). Delisting determinations must be made "solely on the basis of the best scientific and commercial data available," after conducting a status review of the species and after taking into account any efforts by states or other nations, or political subdivisions thereof, to protect the species. 16 U.S.C. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

24. Any interested person may petition Defendants to remove a species from the threatened or endangered species lists. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). When considering delisting, Defendants will examine whether a species was listed due to an error in the data, or in the interpretation of that data, at the time of the original classification. Endangered and Threatened Wildlife and Plants; Regulations for

*North Slope Borough et al. v. Ross et al.*
Complaint - 11

Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020, 45,038 (Aug. 27, 2019).

25.     Pursuant to ESA Section 4(b)(3), Defendants have a non-discretionary duty to determine within 90 days of receipt of a petition, to the maximum extent practicable, whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1). If Defendants determine that the petition presents such information, Defendants shall promptly commence a review of the status of the concerned species. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1). Defendants shall promptly publish each such finding in the Federal Register. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1).

26.     Following a "may be warranted" determination, and completion of the status review, and within 12 months of receiving the petition, Defendants must make one of the following findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but precluded by pending proposals regarding other species' listing status. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(h)(2). If Defendants determine that a petition to delist a species is warranted, NMFS must promptly publish a proposed rule in the Federal Register to implement the action. 16 U.S.C. § 1533(b)(3)(B)(ii); 50 C.F.R. § 424.14(h)(2)(ii). Defendants then have one year, with the possibility of a six-month extension if there is substantial

*North Slope Borough et al. v. Ross et al.*
Complaint - 12

disagreement regarding the available data, to make a final determination on the proposal. 16 U.S.C. § 1533(b)(6)(A); 50 C.F.R. § 424.17(a).

27.     ESA Section 11(g) provides that "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under [ESA Section 4, 16 U.S.C. § 1533] which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). The ESA defines "person" to mean "an individual, corporation, partnership, trust, association, or any other private entity; or any officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality, or political subdivision of a State, or of any foreign government; any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States." *Id.* § 1532(13).

28.     The APA entitles a person "adversely affected or aggrieved by agency action" to judicial review of such action. 5 U.S.C. § 702. Actions reviewable under the APA include an agency's failure to act. *Id.* § 551(13). Under the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

## V.     FACTUAL BACKGROUND

29.     Of the ringed seal subspecies, the Arctic ringed seal has the largest population, numbering in the millions, and is the most abundant marine mammal in the Arctic. *See* Listing Rule, 77 Fed. Reg. at 76,716. Within the jurisdiction of the United States, the Arctic ringed seal is found year-round in the Beaufort, Chukchi, and Bering

*North Slope Borough et al. v. Ross et al.*
Complaint - 13

Seas. NMFS has also acknowledged that Arctic ringed seals are widely distributed throughout their range, are genetically diverse, and are not presently in danger of extinction. *Id.* at 76,728. The International Union for the Conservation of Nature continues to classify the ringed seal as a species of "Least Concern" on its Red List, meaning that the species is considered widespread and abundant. *See* Lowry, L., *Ringed Seal*, *Pusa hispida*, THE IUCN RED LIST OF THREATENED SPECIES 2016, https://www.iucnredlist.org/species/41672/45231341#assessment-information (last visited July 15, 2020).

30. Notwithstanding, NMFS listed the Arctic ringed seal as a threatened species on December 28, 2012, based on its conclusion that "[d]iminishing ice and snow cover are the greatest challenges to persistence of all the ringed seal subspecies." *Id.* at 76,711. Despite acknowledging that data was not available "to make statistically rigorous inferences how Arctic ringed seals will respond to habitat loss over time," *id*. at 76,728, NMFS determined that, by the end of the century, it is likely that Arctic ringed seals would persist in only a few isolated parts of their range. *Id.* at 76,716. Since listing the Arctic ringed seal in 2012, NMFS has not conducted a subsequent review of the status of the species. *See* 16 U.S.C. § 1533(c)(2) (requiring such review at least once every five years). Since the issuance of the Listing Rule, available scientific information confirms that the population of Arctic ringed seals remains high and that the population remains healthy, despite Arctic sea ice coverage decline over the past several decades.

*North Slope Borough et al. v. Ross et al.*
Complaint - 14

31.     As detailed in the Petition, new information and additional analyses of the previously available data demonstrates that the scientific basis for listing the Arctic ringed seal was erroneous, and that the species is not likely to become in danger of extinction within the foreseeable future.  For example, new information demonstrates that observed changes in sea ice extent and duration have not resulted in detectable corresponding effects to ringed seal population health or reductions in ringed seal population size, contradicting the assumptions made in the listing decision.  For example, more recent studies show that the ringed seals in the Bering and Chukchi Seas have not exhibited declines in body condition, growth, or pregnancy rate; the age at maturity is younger than in previous decades; and pups are surviving to weaning in current ice and snow conditions.  New population data demonstrates that the Arctic ringed seal population remains at high levels and the data does not reflect a climate-related population decline.  These scientific data are all indications of a positive response to environmental conditions and demonstrate that Arctic ringed seals are more resilient to environmental changes than previously assumed by NMFS.

32.     Further, NMFS's determination in the listing decision that the foreseeable future extended through the end of the century was in error.  NMFS based its foreseeable future on projections of climate-related habitat decline to the year 2100, but NMFS lacked the requisite scientific data to make reliable predictions about how the Arctic ringed seal would respond to this threat over that time period.  *See* 50 C.F.R. § 424.11(d).

*North Slope Borough et al. v. Ross et al.*
Complaint - 15

In a more recent 2017 assessment of the Pacific walrus (also an Arctic species), the U.S. Fish and Wildlife Service acknowledged that sea ice forecasts for 2100 are "highly uncertain,"[1] and that, beyond 2060 (which corresponds to three species generation lengths), the impacts of climate change and other stressors on this species "are based on speculation, rather than reliable prediction." Endangered and Threatened Wildlife and Plants; 12-Month Findings on Petitions To List 25 Species as Endangered or Threatened Species, 82 Fed. Reg. 46,618, 46,644 (Oct. 5, 2017). This methodology reflects the best available science regarding the analysis of climate-related effects on Arctic marine mammals. For the Arctic ringed seal, three generations would correspond to a foreseeable future of 2055, and there is no information that the effects associated with any habitat declines in this time period are sufficient to make the Arctic ringed seal likely to become in danger of extinction.

33.     Based on the best scientific and commercial data currently available, as explained in the Petition, delisting of the Arctic ringed seal is warranted. The projected threats associated with a climate-related decline in habitat and the corresponding effects to the population can only be reliably predicted to approximately 2055. Within this foreseeable future, there is no information demonstrating that the magnitude of effects to the species is sufficient to put the Arctic ringed seal in danger of extinction. Finally,

---

[1] MacCracken, J.G., W.S. Beatty, J.L. Garlich-Miller, M.L. Kissling, and J.A. Snyder. *Final Species Status Assessment for the Pacific Walrus (Odobenus rosmarus divergens)* at 158 (2017).

none of the other ESA listing factors (i.e., overutilization, disease or predation, inadequacy of regulatory mechanisms, and other natural or manmade factors), either singly or in combination, pose a threat to the status of the Arctic ringed seal.

34.     Plaintiffs submitted their Petition to the Secretary, acting through NMFS, on March 26, 2019.  Defendants were required to make their 90-day determination on whether delisting the Arctic ringed seal "may be warranted" on or about June 24, 2019. Furthermore, the mandatory deadline for the 12-month finding of whether delisting "is warranted" expired on or about March 26, 2020.  Defendants received the Petition almost 16 months ago and have failed to make any of the mandatory determinations required by the ESA.

35.     On April 24, 2020, Plaintiffs sent Defendants a 60-day notice of intent to sue letter regarding the failure to act on the Petition to delist the Arctic ringed seal. Defendants have not remedied their violations of ESA Section 4(b)(3).

## VI.     CLAIM FOR RELIEF

### (Violation of the ESA and the APA – Failure to Make a 90-Day Finding on the Petition to Delist the Arctic Ringed Seal)

36.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-35 of this Complaint.

37.     The ESA requires Defendants to determine whether a petition to delist a species "presents substantial scientific or commercial information indicating that the

*North Slope Borough et al. v. Ross et al.*
Complaint - 17

petitioned action may be warranted" within 90 days of receipt of the Petition, to the maximum extent practicable. 16 U.S.C. § 1533(b)(3)(A).

38. Defendants' failure to perform their mandatory, non-discretionary duty to act on Plaintiffs' Petition to delist the Arctic ringed seal within 90 days violates the ESA, 16 U.S.C. § 1533, for purposes of the ESA's citizen suit provision. *Id.* § 1540(g)(1)(C).

39. Alternatively, Defendants' failure to make a timely 90-day finding on the Petition constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and provide the following relief:

1. Declare that Defendants have violated the ESA and/or APA by failing to make and publish in the Federal Register a timely 90-day finding on the Petition to delist the Arctic ringed seal;

2. Issue an injunction compelling the Secretary to make and publish in the Federal Register a 90-day finding on the Petition to delist the Arctic ringed seal by a date certain;

3. Award Plaintiffs their reasonable attorney fees, costs, expenses and disbursements, including attorney fees associated with this litigation,

pursuant to 16 U.S.C. § 1540(g)(4) and any other applicable authorities; and

4.    Grant Plaintiffs such other and further relief as this Court may deem just and equitable.

DATED this 24th day of July, 2020.


/s/      Tyson C. Kade
Tyson C. Kade, D.C. Bar # 1018014
*Pro Hac Vice Pending*
Melinda L. Meade Meyers, Alaska Bar # 2006053
*Admission Pending*
**VAN NESS FELDMAN, LLP**

*Counsel for Plaintiffs*


*North Slope Borough et al. v. Ross et al.*
Complaint - 19